**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| In re:<br><br>**TRICO MILLWORKS, INC.,**<br><br>Debtor | **Chapter 11**<br>**Case No. 25-20222-MAF** |
|---|---|

**UNITED STATES TRUSTEE'S OBJECTION TO CONFIRMATION OF**
**PLAN OF REORGANIZATION OF TRICO MILLWORKS, INC.**
**DATED NOVEMBER 4, 2025 [ECF NO. 86]**

Pursuant to 28 U.S.C. § 586 and 11 U.S.C. §§ 1190 and 1191, William K. Harrington, the United States Trustee for Region 1 ("**United States Trustee**") hereby submits this objection to the confirmation of the Plan of Reorganization of Trico Millworks, Inc. Dated November 4, 2025 ("**Plan**") [Court Docket Number ("**ECF No.**") 86].

### I.     PROCEDURAL STATUS

1.     On September 15, 2025, Trico Millworks, Inc. ("**Debtor**") filed a voluntary chapter 11 petition with the Court and elected to proceed under subchapter V of chapter 11 ("**Subchapter V**"). *See* ECF No. 1. The Debtor filed its bankruptcy schedules ("**Schedules**") and statement of financial affairs on September 29, 2025. *See* ECF No. 51.

2.     Tanya Sambatakos ("**Subchapter V Trustee**") was appointed by the United States Trustee to serve as the Subchapter V trustee. The Subchapter V Trustee is not a standing trustee. Pursuant to 11 U.S.C. § 1183(a), the Subchapter V Trustee was appointed on a case-by-case basis by the United States Trustee to the Debtor's case.

3.     The Debtor is a corporation that provides a full range of specialized millwork and related construction services. ECF No. 86, at p. 5. On November 4, 2025, the Debtor filed the

current Plan, which is a three-year plan of reorganization the Debtor proposes to fund primarily through: (a) cash on hand; (b) the proceeds generated from the ongoing operation of the Debtor's business; (c) the proceeds of any Causes of Action and Claims which the Debtor and/or its Estate has brought and/or may elect to bring; and (d) refinancing some or all of the Allowed Claims under the Plan. *See* ECF No. 86, at pp. 12 - 13.

## II.  OBJECTIONS

### A.  The Debtor Has Not Demonstrated That the Plan Would Comply with Applicable Provisions of Subchapter V If Confirmation Is Non-consensual.

4.  The Plan provides for seven impaired voting classes. ECF No. 86, at pp. 9-12. If any impaired class fails to vote in favor of the Plan, the Debtor must seek confirmation under Section 1191(b) and demonstrate that the Plan complies with all provisions of Subchapter V applicable to a non-consensually confirmed Plan.

#### i.  The Plan Cannot Be Confirmed Consensually Unless All Impaired Classes Affirmatively Vote in Favor of the Plan.

5.  Section 1191(a) of the Bankruptcy Code provides: "[t]he court shall confirm a plan under this subchapter only if all of the requirements of section 1129(a), other than paragraph (15) of that section, of this title are met." 11 U.S.C. § 1191(a). Confirmation under Section 1191(a) is referred to as "consensual." *In re M.V.J. Auto World, Inc.*, 661 B.R. 186, 188 (Bankr. S.D. Fla. 2024). Section 1191(b) of the Bankruptcy Code also provides for confirmation, if "all of the applicable requirements of section 1129(a) of this title, other than paragraphs (8), (10), and (15) of that section, are met. . . if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not

accepted, the plan. 11 U.S.C. § 1191(b).[1]  Confirmation under Section 1191(b) is referred to as "non-consensual." *M.V.J. Auto World,* 661 B.R. at 188.

6. For consensual confirmation in a Subchapter V case, the acceptances required by Sections 1129(a)(8) and (a)(10) are governed by the plain language of Section 1126 of the Code and Fed. R. Bankr. P. 3018(c).  Section 1126(a) provides that "[t]he holder of a claim . . . may accept or reject a plan." 11 U.S.C. § 1126(a).  Federal Rule of Bankruptcy Procedure 3018(c) states that such acceptance or rejection must be in writing.  Fed. R. Bankr. P. 3018(c).

7. The only exception to the general rule that acceptances or rejections must be in writing is set forth in Section 1126(f), which provides that unimpaired classes "are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required."  11 U.S.C. § 1126(f).

8. Consequently, a class of claims is either unimpaired—and presumptively deemed to accept the plan—or it may vote in writing to accept or reject the plan.  *See* 11 U.S.C. §§ 1126(a), (f), 1129(a)(8).

9. The Plan provides for seven impaired voting classes.  ECF No. 86, at pp. 9-12.  If any class does not vote in favor of the Plan, the Plan cannot be confirmed consensually under Section 1191(a) because it would fail to satisfy the requirements of Section 1129(a)(8).  *See generally, In re Thomas Orthodontics, S.C.*, Case No. 23-25432, 2024 Bankr. LEXIS 2334, *19 (Bankr. E.D. Wis. Sept. 25, 2024) ("a clear majority of courts have held that an impaired class cannot accept a chapter 11 plan by silence"); *In re M.V.J. Auto World*, 661 B.R. at 190

---

[1] Section 1129(a)(8) provides: "[w]ith respect to each class of claims or interests—(A) such class has accepted the plan; or (B) such class is not impaired under the plan." 11 U.S.C. § 1129(a)(8).  Section 1129(a)(10) provides: "[i]f a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptances of the plan by any insider." 11 U.S.C. § 1129(a)(10).

3

("Because each class of impaired claims did not accept the Debtor's Plan, section 1129(a)(8) was not met.") (confirming Subchapter V plan with one accepting impaired class and one non-voting impaired class non-consensually under Section 1191(b) and denying Debtor's request for consensual confirmation under Section 1191(a)); and *In re Creason*, 2023 Bankr. LEXIS 478 (Bankr. W.D. Mich. Feb. 23, 2023) (confirming Subchapter V plan with a non-voting impaired class non-consensually under Section 1191(b) and denying Debtor's request for consensual confirmation under Section 1191(a)).

      ii. <u>If All Impaired Classes Do Not Accept the Plan, It Is Unclear That the Debtor Can Meet Its Burden of Demonstrating the Plan's Treatment of Disposable Income Is Fair and Equitable</u>.

10.     If all impaired classes do not accept the Plan, the Debtor must demonstrate that the Plan does not discriminate unfairly and is fair and equitable with respect to those classes pursuant to 11 U.S.C. § 1191(b).

11.     Under Section 1191(c)(2), the condition that a plan be fair and equitable includes the requirement that the debtor demonstrate:

> (2) As of the effective date of the plan--
>
> (A) the plan provides that all of the projected disposable income of the debtor to be received in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date that the first payment is due under the plan will be applied to make payments under the plan; or
>
> (B) the value of the property to be distributed under the plan in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date on which the first distribution is due under the plan is not less than the projected disposable income of the debtor.

11 U.S.C. § 1191(c)(2).

12.     Pursuant to Section 1191(d), the term "disposable income" means:

the income that is received by the debtor and that is not reasonably necessary to be expended--

(1) for--

(A) the maintenance or support of the debtor or a dependent of the debtor; or

(B) a domestic support obligation that first becomes payable after the date of the filing of the petition; or

(2) for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor.

11 U.S.C. § 1191(d).

13. A Subchapter V debtor seeking to confirm a non-consensual plan "bears the burden of showing the court that the plan's treatment of disposable income is 'fair and equitable.'" *In re Premier Glass Servs., LLC*, 664 B.R. 465, 471 (Bankr. N.D. Ill. 2024). To meet its requirement, "the debtor must satisfy the court 'that the Plan adequately commits all disposable income to making payments for the life of the plan.'" *Id*. at 470–71. First, the debtor "must show that there is a reasoned basis for its projections, and second, it must show that line items deducted from disposable income are indeed 'necessary for the continuation, preservation, and operation of the debtor's business' and therefore fair and equitable to the unsecured creditors" under Section 1191(c) and (d). *Id*. at 473.

14. It is unclear that the requirements of 11 U.S.C. § 1191(c) could be met if all impaired classes do not accept the Plan. The Debtor proposes making three *pro rata* payments of projected net disposable income to holders of Class 8 (Allowed General Unsecured) claims, on or within thirty days of the first, second, and third anniversaries of the Effective Date. ECF No. 86, at pp. 11-12. But the Debtor also proposes that it be entitled to pay <u>less</u> than the projected disposable income if the projected payments are made early, with a discount varying between 15% and 25%. *Id.* The Debtor does not explain the basis for this discount, nor has the

5

Debtor demonstrated that this provision would comply with Section 1191(c) if the Plan is confirmed non-consensually.

      iii.   <u>The Plan and Proposed Order Should Provide for the Subchapter V Trustee to Remain in Place for the Life of the Plan If the Plan Is Confirmed Non-consensually, as Required by the Bankruptcy Code.</u>

15.    The Plan provides for the Subchapter V Trustee's duties to terminate upon substantial consummation, as they would if a plan is confirmed consensually. *See* ECF No. 86, at p. 18. The Plan does not provide for the Subchapter V Trustee to remain in place for the life of the Plan in the event the Plan is confirmed non-consensually, as the Bankruptcy Code requires. The Plan should provide for the Subchapter V Trustee to remain in service until Plan completion in the event confirmation proceeds under Section 1191(b) on a non-consensual basis, in accordance with the provisions of Subchapter V.

16.    Under Subchapter V, a trustee's post-confirmation duties will differ depending upon whether the plan is confirmed consensually or on a non-consensual basis. If a debtor's plan is confirmed consensually pursuant to Section 1191(a), the Subchapter V trustee's duties will terminate with substantial consummation of the plan. 11 U.S.C. § 1183(c)(1).

17.    In contrast, if a Subchapter V plan is confirmed on a non-consensual basis pursuant to Section 1191(b), the Subchapter V trustee will remain in place for the life of the plan. This is the case even when a non-consensual plan's terms relieve the Subchapter V trustee from the obligation to make plan payments. *See, e.g., In re Gui-Mer-Fe, Inc.*, 2022 WL 1216270 at *8 (Bankr. D.P.R. 2022) (finding, in a case where the plan provided for the debtor to make direct payments to its creditors pursuant to 11 U.S.C. § 1194(b), that "plan confirmation under 11 U.S.C. § 1191(b) does not terminate the subchapter V trustee's services pursuant to 11 U.S.C. § 1183(b) and (c)(2)").

18. In non-consensual cases, Subchapter V trustees must ensure that debtors commence making timely plan payments and be heard on any efforts to modify the plan after confirmation. 11 U.S.C. § 1183(b)(3)(C) and (b)(4). The Subchapter V trustee also must remain in service if a debtor fails to perform its plan obligations and is removed from possession as provided by statute. 11 U.S.C. § 1185(a). By only providing for a Subchapter V trustee's reappointment in cases with consensual plans, Congress presumed that the Code dictated that trustees remain in service in all other cases. 11 U.S.C. § 1183(c)(1).

19. A Subchapter V trustee thus must remain in place until the completion of a non-consensual plan. The Plan as currently drafted, however, provides for the Subchapter V Trustee's duties to terminate upon substantial consummation, as they would if a plan is confirmed consensually. *See* ECF No. 86, at p. 18. The Plan should provide for the Subchapter V Trustee to remain in service until Plan completion in the event confirmation proceeds under Section 1191(b) on a non-consensual basis, as required by the Bankruptcy Code.

    **B.**     **The Plan's Exculpation Clause Should Be Temporally Limited to the Period Between the Petition Date and Effective Date, Should Be Limited to Conduct Within the Scope of Fiduciary Duties in Connection With the Bankruptcy Case, and Should Not Incorporate Other Unrelated Affirmative Defenses.**

20. Exculpation provisions in a plan set forth the standard for liability that would apply to actions against fiduciaries in the event that they were sued for their participation in the reorganization. *In re PWS Holding Corp.*, 228 F.3d 224, 246–47 (3d Cir. 2000). Such clauses establish the standard of care that will trigger liability in future litigation against an exculpated party for acts arising out of a debtor's restructuring. *In re Murray Metallurgical Coal Holdings, LLC*, 623 B.R. 444, 500–01 (Bankr. S.D. Ohio 2021). Courts have permitted the exculpation of estate fiduciaries for actions taken during the bankruptcy case to the extent such provisions

7

merely reiterate the standards to which estate fiduciaries are held in chapter 11. *In re Washington Mut., Inc.*, 442 B.R. 314, 350-51 (Bankr. D. Del. 2011); *In re PWS Holding Corp.*, 228 F.3d at 246–47.

21. Here, the exculpation clause included in the Plan is impermissibly broad because it extends to conduct that is not temporally limited to the post-petition and pre-effective date bankruptcy case, it covers conduct beyond the scope of the parties' fiduciary duties in connection with the Debtor's bankruptcy proceedings, and it incorporates other affirmative defenses that go beyond merely restating the standards to which chapter 11 fiduciaries are held.

22. Section 7.3 of the Plan contains the following exculpation clause ("**Exculpation Clause**"):

> 7.3 **Exculpation. On and after the Effective Date, the Debtor, David Baker, Bernstein, Shur, Sawyer & Nelson, P.A. (including its shareholders and employees), and BCM Advisory Group (including its shareholders and employees) (collectively, the "<u>Exculpation Parties</u>") shall not have or incur any liability for, and are expressly exculpated, released, and discharged from any claim or any past or present actions taken or omitted to be taken under or in connection with, related to, effecting, or arising out of: (i) the Debtor's operations between the Petition Date and the Confirmation Date; (ii) the Chapter 11 Case; (iii) the administration of the Debtor's Assets between the Petition Date and the Confirmation Date; (iv) the pursuit of confirmation of the Plan or any other plan between the Petition Date and the Confirmation Date; (v) the formulation, preparation, dissemination, implementation, administration, confirmation, or consummation of this Plan; (vi) any other act taken or omitted to be taken in connection with the Debtor's business during the Chapter 11 Case; or (vii) any contract, instruction, release, or other agreement entered into or created in connection with the foregoing, <u>except</u> only for actions or omissions to act to the extent determined by a court of competent jurisdiction (with such order becoming a final, non-appealable order) to be by reason of such party's gross negligence, willful misconduct, or fraud, and in all respects, such party shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan; it being expressly understood that any act or omission with the approval of the Bankruptcy Court shall be conclusively deemed not to constitute gross negligence, willful misconduct, or fraud, unless the approval of the Bankruptcy Court was obtained by fraud or misrepresentation.**

8

ECF No. 86, p. 16.

23. To the extent that applicable law authorizes exculpation beyond 11 U.S.C. § 1125(e), relevant case law provides that any exculpation should only cover estate fiduciaries for their conduct occurring from the petition date until the effective date. *See Matter of Highland Cap. Mgmt., L.P.*, 48 F.4th 419, 437 (5th Cir. 2022) ("any exculpation in a Chapter 11 reorganization plan [must] be limited to the debtor, the creditors' committee and its members for conduct within the scope of their duties, 11 U.S.C. § 1103(c), and the trustees within the scope of their duties . . . ."); *In re Pac. Lumber Co.*, 584 F.3d 229, 252 (5th Cir. 2009) (same); *In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000) (court considered whether an official committee of unsecured creditors could be exculpated and held that 11 U.S.C. § 1103(c) implies both a fiduciary duty and a limited grant of immunity to members of the unsecured creditors' committee); *In re Mallinckrodt PLC*, 639 B.R. 837, 883 (Bankr. D. Del. 2022) (exculpation "only extends to conduct that occurs between the Petition Date and the effective date."); *In re Wash. Mut., Inc.*, 442 B.R. 314, 350-51 (Bankr. D. Del. 2011) ("[An] exculpation clause must be limited to the fiduciaries who have served during the chapter 11 proceeding: estate professionals, the Committees and their members, and the Debtors' directors and officers.").

24. The Exculpation Clause as drafted is overbroad for multiple reasons. First, it is not limited to actions occurring between the Petition Date and the Effective Date. It references acts or omissions that could encompass pre-petition and post-effective date conduct (for example, the "formulation, preparation, dissemination, implementation, administration, confirmation, or consummation of this Plan").

25. In its current form the exculpation language would also impermissibly extend beyond the scope of the fiduciaries' duties regarding the bankruptcy case. The Exculpation Clause would insulate the Debtor for any actions arising out of "the Debtor's operations" and acts "taken or omitted to be taken in connection with the Debtor's business" outside the purview of the Bankruptcy Court. The provision would be broad enough to cover, for example, injuries that occurred on the Debtor's premises post-petition or post-petition claims and debts that arose in the conduct of the Debtor's business affairs.

26. The Exculpation Clause also inappropriately incorporates other affirmative defenses rather than merely reiterating the standards to which estate fiduciaries are held in chapter 11. The exculpation language improperly references an "advice of counsel" defense and an "approval of the Bankruptcy Court" defense to any causes of action. Those provisions are improper and should be stricken.

### C. The Bankruptcy Court Lacks the Authority to Grant the Debtor Power of Attorney in the Name of Third Parties.

27. The Plan states that the Debtor may sell assets after the Effective Date and satisfy claims through the proceeds of such sales. ECF No. 86, at pp. 12-13. With regard to holders of allowed secured claims, the Plan impermissibly authorizes the Debtor to "execute and file such statements, instruments, discharges, releases and other documents, and to obtain new titles, on behalf of such parties with respect to the applicable Assets" and grants the Debtor "limited power of attorney to execute the foregoing in the name of such parties to effectuate the terms of this Plan." ECF No. 86, at p. 13.

28. The United States Trustee expressly objects to this Plan term because the Bankruptcy Court has no authority to grant the Debtor power of attorney in the name of third

10

parties or to authorize the Debtor to execute, file, or obtain legal instruments on their behalf, especially where no proposed sales are pending.  The Bankruptcy Code simply does not authorize the type of relief sought through this provision of the Plan.

WHEREFORE, the United States Trustee submits this objection to the confirmation of the Plan of Reorganization of Trico Millworks, Inc. Dated November 4, 2025 (ECF No. 86).

                    WILLIAM K. HARRINGTON,
                    UNITED STATES TRUSTEE

Dated: December 11, 2025      By:    <u>/s/ Ann Marie Dirsa</u>
                                    Ann Marie Dirsa BNH# 06121
                                    Office of the U.S. Trustee
                                    53 Pleasant Street, Suite 2300
                                    Concord, NH 03301
                                    (603) 333-2781

### CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below I served copies of the foregoing pleading(s) entitled <u>United States Trustee's Objection to Confirmation of Plan of Reorganization of Trico Millworks, Inc. Dated November 4, 2025 [ECF No. 86]</u> to all parties named below by United States first class postage prepaid mail at the address(es) listed or in such other manner as I have indicated:

Via U.S. Mail, postage prepaid to:    N/A

Via the Court's CM/ECF system to:
- James Des Veaux Concannon, Esq.
- Jeremy R. Fischer, Esq.
- Kellie W. Fisher, Esq.
- David Ginzer
- Marcus E. Pratt, Esq.
- Adam R. Prescott, Esq.
- Tanya Sambatakos, Esq.

I <u>Ann Marie Dirsa</u>, certify that I am eighteen (18) years of age or older, and under penalty of perjury, that the foregoing is true and correct.

11

Dated: December 11, 2025　　　　By:　/s/ Ann Marie Dirsa
　　　　　　　　　　　　　　　　　　　Ann Marie Dirsa, BNH 06121
　　　　　　　　　　　　　　　　　　　Office of the U.S. Trustee
　　　　　　　　　　　　　　　　　　　53 Pleasant Street, Suite 2300
　　　　　　　　　　　　　　　　　　　Concord, NH 03301
　　　　　　　　　　　　　　　　　　　(603) 333-2781